UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-2-RJC-DSC
3:12-cv-3-GCM

| In the Matter of the Arbitration of | ) |
| --- | --- |
| ARROWOOD INDEMNITY COMPANY, f/k/a ROYAL INDEMNITY COMPANY, | ) |
| Petitioner, | ) |
| v. | ) ORDER |
| HARPER INSURANCE COMPANY, f/k/a TUREGUM INSURANCE COMPANY, | ) |
| Respondent. | ) |

**THIS MATTER** comes before the Court on Petitioner Arrowood Indemnity Company's ("Petitioner") Verified Petition for an Order Appointing an Umpire in the Graybar Arbitration, (Doc. No. 1),[1] Respondent Harper Insurance Company's ("Respondent") Motion for Extension of Time to Answer, (Doc. No. 11), and Respondent's Motion to Consolidate this case with Case No. 3:12-cv-3, currently before the Hon. Graham Mullen, (Doc. No. 12).

I.   BACKGROUND

Petitioner and Respondent contracted for Respondent to provide reinsurance protection to Petitioner for sums Petitioner needed to pay out on its insurance contracts with its clients. (Doc. No. 1 at 3-4). Petitioner and Respondent signed a series of contracts called the "Global Slip" establishing this obligation. (Id.). The Global Slip contains an arbitration clause which provides

---

[1] Unless otherwise indicated docket number designations refer to case number 3:12-cv-2-RJC-DSC.

that "i[f] any dispute shall arise between the Group and the Reinsurers with reference to the interpretation of this Contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, one chosen by each party and the third by the two so chosen . . ." (Doc. Nos. 1-2 at 12; 1-3 at 12; 1-4 at 8).

Three disputes have arisen under the Global Slip. These disputes involve sums that Petitioner paid out to XYZ Corporation,[2] Graybar Electric Company ("Graybar"), and Anco Insulations, Inc. ("Anco"), which Petitioner claims oblige Respondent to pay some amount to Petitioner. Petitioner has submitted three separate demands for arbitration to Respondent regarding these disputes. The parties, however, have only formed a three member arbitration panel in the XYZ affair. That panel has scheduled a merits hearing date for April 2013. (Doc. No. 8 at 2).

The parties have each selected one arbitrator in the Graybar matter, but those arbitrators have yet to select a neutral arbitrator. Petitioner asks this Court to choose a neutral arbitrator in the Graybar matter so that arbitration may proceed. Respondent believes that all three matters should be heard by the single arbitration panel already formed to hear the XYZ matter. (Doc. No. 8 at 3).

Likewise, the parties have each selected one arbitrator in the Anco matter, but those arbitrators have not selected a neutral arbitrator. (Case No. 3:12-cv-3, Doc. No. 1). Petitioner asks Judge Mullen to choose a neutral arbitrator so that arbitration may proceed. (Id.). Respondent believes that all three matters should be heard by the single arbitration panel already formed to hear the XYZ matter. (Id., Doc. No. 8 at 3).

---

[2] Both parties refer to this corporation and the corresponding arbitration as "XYZ" in an effort to maintain the confidentiality surrounding that dispute.

Respondent has filed a motion to consolidate all three matters with the XYZ Panel. (Doc. No. 11 at 4). The XYZ Panel has scheduled oral arguments and deliberations for February 15. (Id.).

## II. ANALYSIS

### A. Consolidation

Petitioner filed the Graybar case, Case No. 3:12-cv-2, with this Court before Petitioner filed the Anco case, Case No. 3:12-cv-3, with Judge Mullen. In an effort to avoid duplicative litigation and conserve judicial resources, this Court will consolidate Judge Mullen's case with Case No. 3:12-cv-2. See Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co., 675 F.2d 610, 611 n.1 (4th Cir. 1982); Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006). Both cases will be heard before this Court under Case No. 3:12-cv-2.

### B. Number of Arbitration Panels

The parties' dispute turns on whether they are to proceed to arbitration before one panel or three to resolve their three disputes. The parties agree that all three disputes are properly resolved through arbitration rather than through the courts.

While the issue of whether the parties have committed a dispute to arbitral resolution is usually a question for the court, see First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995), "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator," Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002).

The Fourth Circuit has held that the issue of how many arbitration panels should decide an issue or which panel should decide certain issues is a procedural question for an arbitration panel to decide and not for the court. Central West Virginia Energy, Inc. v. Bayer Cropscience

LP, 645 F.3d 267, 274 (4th Cir. 2011); see also Shaw's Supermarkets, Inc. v. United Food and Commerical Workers Union, Local 791, 321 F.3d 251 (1st Cir. 2003) (whether to consolidate three arbitrations into one is a "procedural matter for the arbitrator"); Avon Prods., Inc. v. Int'l Union Auto Workers of Am., AFL-CIO, Local 710, 386 F.2d 651, 658 (8th Cir. 1967) (first arbitrator selected should decide "whether the grievances are to be resolved in a single or in multiple proceedings."); Fitchburg Paper Co. v. MacDonald, 242 F. Supp. 502, 505 (D. Mass. 1965) (same). Given the Fourth Circuit's decision in Bayer, the issue of how many arbitration panels should be formed to decide a set of disputes is a procedural matter for an arbitrator to decide.

However, this does not resolve the issue entirely. Petitioner asks this Court to appoint a neutral arbitrator in each of two new separate arbitration panels to hear the Graybar and Anco matters. The Fourth Circuit's decision in Bayer does not answer whether the Court should impanel separate arbitration panels in the Graybar and Anco matters before allowing all three of those panels to decide the consolidation issue. Petitioner argues that persuasive authority "requires this Court to decide the Graybar [and Anco] Petition[s to impanel the new arbitration panels] before the parties (or the XYZ Panel) can address the issue of consolidation." (Doc. No. 14 at 5, 7; Case No. 3:12-cv-3, Doc. No. 10 at 5, 7).

These three disputes all arise from the Global Slip. The arbitration provision in that agreement provides only that "i[f] any dispute shall arise between the Group and the Reinsurers with reference to the interpretation of this Contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators . . ." (Doc. Nos. 1-2 at 12; 1-3 at 12; 1-4 at 8). Both parties' readings of this provision are plausible. It could mean that either all disputes involving the Global Slip are to be decided by one panel of three arbitrators or each

4

dispute is to be decided by a separate panel of three arbitrators. Appointing two additional panels would reflect a choice between these competing understandings and an interpretation of the parties' contract. That job is solely one for an arbitrator to decide. See Bayer, 645 F.3d at 274. The only panel that currently exists to do the job is the XYZ Panel. Therefore, it is for that panel to decide whether these three disputes should be heard by a single arbitration panel or by three.

The cases Petitioner cites to the contrary are inapposite. In each case, the parties had failed to fully form even one arbitration panel. See Argonaut Ins. co. v. Century Indemnity Co., No. 05-5355, 2007 WL 2668889, at *3 (E.D. Penn. Sept. 6, 2007); Clearwater Ins. Co. v. Granite State Ins. Co., No. C 06-4472, 2006 WL 2827872, at *1 (N.D. Cal. Oct. 2, 2006); Employer's Ins. Co. of Wasau v. Century Indemnity Co., No. 05-C-263, 2005 WL 2100977, at *2 (W.D. Wis. July 19, 2005). Thus, those courts did have to order the formation of an arbitration panel before deferring to an arbitrator. As one court observed, "[i]t would be nonsensical to package the parties' dispute and send it off addressed to 'arbitrator' when, in fact, there is no arbitrator to receive it." Wasau, 2005 WL 2100977, at *2. These courts declined to choose one panel out of the multiple half-formed panels into which to blow the breath of life. Id. at *4; Clearwater, 2006 WL 2827872, at *3; Argonaut, 2007 WL 2668889, at *3-4.

More analogous precedent is found in Fitchburg Paper Co. v. MacDonald, 242 F. Supp. 502, 505 (D. Mass. 1965). In Fitchburg, only one arbitration was in progress. Id. at 504. Upon finding that the number of arbitrators to decide the merits was a procedural question for an arbitrator to decide, the Court deferred to the single arbitration already in progress rather than create a rival. Id. at 505. Likewise, only one arbitration has been fully formed and able to schedule hearings in this case.

"By agreeing to have their entire dispute heard by arbitrators, [Petitioner] and [Respondent] chose to remove the courts from such threshold disputes over how their arbitration should proceed." Bayer, 645 F.3d at 274. The XYZ panel is the proper body to decide whether it will resolve only the XYZ dispute or also the Graybar and Anco disputes.

### C. Extension of Time

Respondent has moved to extend the deadline by which it must respond to Petitioner's Petition in both case number 3:12-cv-2 and 3:12-cv-3 until after the XYZ Panel can decide the consolidation question. (Doc. No. 11; 3:12-cv-3, Doc. No. 8). Respondent estimates that this will be accomplished by February 21, 2012. (Id. at 5). It will not be necessary for this Court to appoint two neutral arbitrators to complete separate panels for the Anco and Graybar matters if the XYZ Panel determines that all three disputes must be litigated before one panel. Thus, some stay of Respondent's answer deadline is appropriate. However, it will also not be necessary for this Court to select the neutral umpires if the XYZ Panel determines that separate panels are required and the parties' existing arbitrators are able to select neutral umpires themselves. Therefore, this Court shall stay this action until thirty (30) days after the XYZ Panel has reached a decision on the consolidation question. This will give the parties time to agree upon neutral umpires in the event that the XYZ Panel determines separate panels are required to hear the Anco and Graybar matters. The parties shall file a joint status report by Friday, March 2, 2012, detailing the XYZ Panel's decision and the parties' positions on any further need for this Court's jurisdiction.

## IV. CONCLUSION

The XYZ panel is the proper body to decide whether it will resolve only the XYZ dispute or also the Graybar and Anco disputes. Respondent's Motion to Consolidate this case with Case

6

No. 3:12-cv-3, currently before the Hon. Graham Mullen, (Doc. No. 12), is **GRANTED**. Both cases will be heard before this Court under Case No. 3:12-cv-2. Respondent's Motions for Extension of Time to Answer, (Doc. No. 11; Case No. 3:12-cv-3, Doc. No. 8), are **GRANTED**. Respondent shall not need to file a response to either of Petitioner's Petitions until further notice from the Court. This consolidated action is **STAYED** until thirty (30) days after the XYZ Panel has reached a decision on the consolidation question. The parties shall file a joint status report by Friday, March 2, 2012 detailing the XYZ Panel's decision and the parties' positions on any further need for this Court's jurisdiction.

    **IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion to Consolidate this case with Case No. 3:12-cv-3, currently before the Hon. Graham Mullen, (Doc. No. 12), is **GRANTED**. Both cases will be heard before this Court under Case No. 3:12-cv-2;

2. Respondent's Motions for Extension of Time to Answer, (Doc. No. 11; Case No. 3:12-cv-3, Doc. No. 8), are **GRANTED**;

3. This action is **STAYED** until thirty (30) days after the XYZ Panel has reached a decision on the consolidation question; and

4. The parties shall file a joint status report by Friday, March 2, 2012, detailing the XYZ Panel's decision and the parties' positions on any further need for this Court's jurisdiction.

Signed: January 19, 2012

*[signature]*

Robert J. Conrad, Jr.
Chief United States District Judge